STATE v. THOMAS LEE LITTLE.

(Filed 3 May, 1967.)

**1. Searches and Seizures § 1;    Constitutional Law § 37—**

A person may consent to a search of his premises, and such consent will render competent evidence obtained by the search, but the presumption is against the waiver of the constitutional right to be free from unreasonable searches and seizures, and the burden is upon the State to establish unequivocally that the consent was voluntarily, freely and intelligently given, free from coercion, duress or fraud.

**2. Same—    Evidence held sufficient to support finding that defendant freely and voluntarily consented to search of his room.**

Evidence tending to show that the owner of a house in which defendant rented a room gave permission to search the house, that when the officers knocked at the door defendant came to the door and asked them in, that defendant was not under arrest and was not in custody, that defendant voluntarily told the officers which room was his and to go ahead and search the room, and that the defendant was asked to go with the officers to the police station but was told that he did not have to go if he did not want to, and that defendant voluntarily went with the officers, and outside the house, gave them the key to his car and told them to go ahead and search it, *held* sufficient to sustain the conclusion that defendant freely and voluntarily consented to the search, rendering competent in evidence items found in defendant's room which were identified as the very items taken the previous night from the store defendant was charged with breaking and entering and with larceny of goods therefrom.

**3. Searches and Seizures § 1—**

Upon the *voir dire* to determine the voluntariness of defendant's consent to a search of his premises, the weight to be given the evidence is peculiarly one for the trial judge, and his findings are conclusive when supported by competent evidence.

**4. Criminal Law § 159—**

Exceptions not brought forward and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

On *certiorari* from *Hobgood, J.,* August 1966 Criminal Session of ORANGE.

Criminal prosecution upon an indictment with two counts. The first count charges Thomas Lee Little, the defendant, on 21 October 1965 with feloniously breaking and entering, with intent to commit larceny, a certain storehouse, shop, and building occupied by one Howard Pope, a violation of G.S. 14-54; the second count charges that defendant on the same date in the same place, after feloniously breaking and entering the storehouse of Howard Pope, did feloniously steal, take, and carry away cigarettes, cigars, clothing, and watches of the value of $330.76 of the goods and chattels of Howard Pope.

The defendant, who was represented by his attorney, C. C. Malone, Jr., entered a plea of not guilty. Verdict: On the charge of breaking and entering, guilty as charged; on the charge of larceny, guilty.

The judgment of the court on the first count in the indictment was imprisonment for not less than seven nor more than ten years; on the second count the court treated the verdict of guilty as a verdict of guilty of a misdemeanor, and sentenced defendant to imprisonment for two years, and provided that this sentence was to

run concurrently with the sentence on the first count in the indictment.

From the judgment, defendant appealed. We allowed his petition for a writ of *certiorari* on 20 January 1967 for the reason that defendant for good cause shown could not docket his appeal within the time required by our rules.

*C. C. Malone, Jr., for defendant appellant.*
*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*

PARKER, C.J. The only assignment of error carried forward and discussed in defendant's brief is to the effect that the court committed prejudicial error in failing to sustain his motion to suppress certain evidence as having been obtained as the result of an unlawful search and seizure, in violation of the Fourth Amendment to the Federal Constitution and Article I, section 15, of the North Carolina Constitution.

The State offered evidence tending to show these facts: Howard Pope owns and operates a filling station and general store located ten miles north of Hillsborough on Highway #86. He closed his store about 9 p.m. on 21 October 1965. At 7 a.m. the following morning he returned to his store, and found the front door glass broken and the bars behind the glass prized open. There were stolen therefrom about 12 or 15 brands of cigarettes, Tampa Nugget and Tampa Club cigars, Westclox wrist watches, about six pairs of khaki pants, and a box of prime prophylactics.

Bobbie McCullock, a deputy sheriff of Orange County, between 1 a.m. and 2 a.m. on 22 October 1965, went to Howard Pope's store to check it out as a part of his duty. While there he observed a 1962 Pontiac station wagon bearing license No. UF 1236 parked about 200 feet across the road from the Pope store. He later found this station wagon was registered in the name of the defendant. No one was in or about the station wagon when he observed it. The hood of the car was partially raised. He checked the front door of Howard Pope's store, and no one had bothered it at that time.

About 4:30 p.m. on 22 October 1965, Frank McCrea, who had been employed by the Durham police department for 17 years, received information from Deputy Sheriff Maddry of Hillsborough that another deputy sheriff of Orange County about 2 a.m. on that day had observed a station wagon bearing license No. UF 1236 parked on Highway # 86 some 75 yards from a store that was later found to have been broken into, and that it had been learned that

the station wagon bearing this license number was registered in the name of Thomas Lee Little, and Deputy Sheriff Maddry asked Mc-Crea to check it out and see what he could find. McCrea had known defendant for 12 or 14 years. Shortly after 4:30 p.m. that day, he, accompanied by Detective Leathers, went to a beauty parlor in Durham which he knew was operated by Mrs. Elizabeth Brown, and inquired of her if defendant lived at her dwelling house on Cedarwood Drive, Durham.

At this time, defendant objected. The jury was excluded from the courtroom, and the trial judge asked defendant's counsel, C. C. Malone, Jr., if he would like to examine the witness. Malone replied, "Yes, sir." This is a summary of the testimony of McCrea when examined by Malone. After Mrs. Elizabeth Brown stated that defendant did live at her house, he told her that he wanted to go to her dwelling house and look for stolen merchandise. Mrs. Brown told him it was perfectly all right and to go right ahead. He called Deputy Sheriffs McCloud and Young of Durham County, and all four of them went from the beauty parlor to the Brown dwelling. They knocked at the door, and defendant came to the door and asked them in. McCrea testified: "That he told Little that he wanted to look around for some stolen goods that came from a store, and Little said go ahead. That Little was dressed in a gauge *(sic)* shirt and had on the bottom of his pajamas and was in the process of shaving when he told him where his room was. That he (McCrea) was standing at the bathroom door. That he at no time told Little that he had a right to refuse the officers entry into the house. That as he (McCrea) had stated earlier, he told Little before he entered the house that he wanted to search for stolen goods and Mrs. Brown had given him (McCrea) permission to do so. That he asked Little where his room was and Little said the one next to the bathroom, go right ahead. That is the only statement made to Little about his room. That they (officers) searched the entire house. That throughout the search Little was in the bathroom, but when they started to search his room he came out of the bathroom into his room." Defendant was not placed under arrest. He just asked defendant to go with them to the station to talk further. He told him he did not have to go if he did not want to, but he went. Defendant was not handcuffed at this time. There was some conversation about the key to defendant's automobile, and defendant gave it to him. He told defendant they wanted to look in his car, and defendant replied, "Go right ahead." They were standing outdoors beside the car when this request was made of defendant. During all these conversations with defendant, he was free

to leave at will. Defendant at no time expressed a desire not to go to the police station with them. Deputy Sheriffs McCloud and Young were in full uniform and were wearing guns. Defendant knew that all of them were police officers. He did not apprise defendant of his constitutional rights, because he felt that defendant knew them.

At this time defendant moved to suppress all the evidence for the reason that the search and seizure were conducted illegally. The court denied the motion, and defendant excepted.

At this time the jury returned to the courtroom, and the solicitor for the State continued his direct examination of the witness, McCrea, who testified in the presence of the jury in substance as follows: **Defendant informed** him that his room was right next to the bathroom, and to go ahead and look. He found several items in his room, including a pair of khakis and Tampa Club cigars. He found a Westclox wrist watch in defendant's car. He carried all the articles that he found on the search to the police station. On cross-examination, McCrea testified in substance: Defendant was not under arrest at the time he gave the car keys to the officers.

Howard Pope testified in substance: That he could identify a pair of khaki pants which were found in defendant's room and carried to the police station, by his price tag fastened on them which had $4.25 written thereon in his handwriting, and that this was one of the items missing from his store on the morning of October 22. That he also could identify a box of prophylactics having his mark on the end of the box, and that this was one of the items missing from his store on October 22. He could not identify the Westclox wrist watch and the Tampa Club cigars, but there were stolen from his store Tampa Club cigars similar to those found by the officers in defendant's room.

Defendant offered testimony tending to show the following: His brother was driving his station wagon on the afternoon of 21 October 1965, and that he was not driving his automobile the night Howard Pope's store was broken into. Defendant did not testify in his own behalf, but offered only the testimony of Robert McNeil.

It is well-settled law that a person may waive his right to be free from unreasonable searches and seizures. "No rule of public policy forbids its waiver." *Manchester Press Club v. State Liquor Com.*, 89 N.H. 442, 200 A. 407, 116 A.L.R. 1093. It has been repeatedly decided in this jurisdiction, in the United States Supreme Court, and the Courts of this Nation that one can validly consent to a search of his premises, and consent will render competent evidence thus obtained. *S. v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506; *S. v. Coffey*, 255 N.C. 293, 121 S.E. 2d 736; *S. v. McPeak*, 243 N.C.

243, 90 S.E. 2d 501, *cert. den.* 351 U.S. 919, 100 L. Ed. 1451; *S. v. Moore,* 240 N.C. 749, 83 S.E. 2d 912; *Zap v. United States,* 328 U.S. 624, 90 L. Ed. 1477; *United States v. Mitchell,* 322 U.S. 65, 88 L. Ed. 1140; *United States v. Page,* 302 F. 2d 81; *Nelson v. United States,* 208 F. 2d 505; *People v. Preston,* 341 Ill. 407, 173 N.E. 383, 77 A.L.R. 631; *State v. King,* 44 N.J. 346, 209 A. 2d 110, 9 A.L.R. 3d 847, and Annotation thereto in A.L.R. 3d, *ibid,* beginning at p. 858; 79 C.J.S., Searches and Seizures, § 62; 47 Am. Jur., Searches and Seizures, §§ 71-72; Annot. 31 A.L.R. 2d 1078.

Implicit in the very nature of the term "consent" is the requirement of voluntariness. To be voluntary the consent must be "unequivocal and specific," and "freely and intelligently given." *Judd v. United States,* 89 U.S. App. D.C. 64, 66, 190 F. 2d 649, 651. To be voluntary, it must be shown that the waiver was free from coercion, duress or fraud, and not given merely to avoid resistance. 79 C.J.S., Searches and Seizures, § 62b, p. 820. By such a waiver and consent a defendant relinquishes the protection of the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures, *United States v. Smith,* 308 F. 2d 657, 663, *cert. den.* 372 U.S. 906, 9 L. Ed. 2d 716 (1963), and also relinquishes the protection given by Article I, section 15 of the North Carolina Constitution against an unlawful search and seizure, *S. v. Hall,* 264 N.C. 559, 142 S.E. 2d 177.

The burden of proof is upon the State to establish by clear and positive testimony that consent was so given. *Judd v. United States, supra; State v. King, supra;* 79 C.J.S., Searches and Seizures, § 62a, p. 819.

Among the factors tending to show the voluntariness of defendant's consent to the search of his room in Mrs. Brown's dwelling house, and the seizure of certain articles therein are: (1) Officer McCrea told defendant that he wanted to look around for some stolen goods that came from a store, and defendant said, "Go ahead"; (2) Officer McCrea testified that he told defendant before he entered the house that he wanted to search for stolen goods, and Mrs. Brown had given him permission to do so, and he asked defendant where his room was, and defendant said the one next to the bathroom, "Go right ahead"; (3) when the jury returned to the courtroom, McCrea testified in substance that defendant informed him that his room was right next to the bathroom and to go ahead and look; (4) when the officers started to search his room, defendant came out of the bathroom into his room; (5) defendant was not under arrest and not in custody; (6) he was not handcuffed; (7) the officers asked defendant to go with them to the station to talk fur-

STATE *v.* LITTLE.

ther, and McCrea told him he did not have to go if he did not want to, but defendant went; (8) outside the house, McCrea told defendant that he wanted to look in his automobile, and defendant gave him the key and replied, "Go right ahead"; (9) there is nothing in the record tending to show that defendant ever denied his guilt except by a plea of not guilty at the trial, or ever stated that he did not consent to a search of his room, and (10) there is nothing in the record or in the defendant's brief which tends to show that he was a young and inexperienced person; however that may be, the trial judge saw him during the trial.

The trial judge is in a better position to weigh the significance of the pertinent factors than is an appellate tribunal. He has the advantage of seeing and hearing the witnesses, so that he cannot only evaluate their credibility but also can gain a "feel" of the case which a cold record denies to a reviewing court. The Court said in *United States v. Page, supra:* "We sometimes tend to forget that the testimony of a witness, presented to us in a cold record, may make an impression upon us directly contrary to that which we would have received had we seen and heard that witness." The weight to be given to the evidence was peculiarly one for the trial judge. Considering the totality of all the factors and evidence, we find that the evidence supports the finding by the trial judge that the evidence rebuts the presumption against a waiver of fundamental constitutional rights (*Johnson v. Zerbst,* 304 U.S. 458; 82 L. Ed. 1461), and supports the finding that defendant freely and intelligently consented to the search of his room in Mrs. Brown's dwelling house and to the seizure of the articles of merchandise therein found and carried to the police station, which is implicit in the judge's denial of defendant's motion to suppress certain evidence as having been obtained as the result of an unlawful search of defendant's room and the seizure of certain articles therein found. The testimony of the State clearly shows that defendant's consent was "unequivocal and specific" and "freely and intelligently given," and was free from fraud, coercion or duress, actual or implied. The proven facts demonstrate that defendant suffered no deprivation of his constitutional right under the State and Federal Constitutions to be secured from unreasonable searches and seizures, inasmuch as he gave his consent. Defendant's assignment of error that the court committed prejudicial error in failing to sustain his motion to suppress certain evidence as having been obtained as the result of an unlawful search and seizure is overruled.

Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited,

will be taken as abandoned by him. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 810. All assignments of error set forth in the record but not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, have been carefully examined by us and are overruled.

In the trial below we find

No error.