Argued and submitted November 30, 2010, reversed and remanded for entry of judgment of conviction and for sentencing February 23, petition for review denied August 18, 2011 (350 Or 574)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## ALINA N. REED,
*Defendant-Respondent.*

Deschutes County Circuit Court
MI070621; A142284

249 P3d 557

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Ryan T. O'Connor argued the cause for respondent. On the brief were Peter Gartlan, Chief Defender, and Elizabeth Corbridge Ranweiler, Deputy Public Defender, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

The state appeals from the trial court's dismissal with prejudice of the charge in this case of driving under the influence of intoxicants (DUII), ORS 813.010, on the ground that defendant had successfully completed diversion. The state contends that the trial court erred in dismissing the case because defendant had failed to completely pay the filing fee associated with the diversion petition within the statutory one-year diversion period and she had failed to apply for an extension of the diversion period. As explained below, we conclude that the trial court erred, and we therefore remand for entry of defendant's guilty plea.

On April 24, 2007, defendant entered a plea of guilty to the DUII charge and simultaneously petitioned to enter into the DUII diversion program. The trial court allowed the petition and accepted the plea, but withheld entry of a judgment of conviction pursuant to ORS 813.230 pending defendant's completion of the diversion program. The "petition/ diversion" agreement, which covered the period from April 24, 2007 through April 23, 2008, provided, in part:

"3.   I will attend a diagnostic assessment to determine the possible existence of an alcohol or drug abuse problem and to pay the cost of the assessment directly to the agency providing the assessment.

"4.   I will pay to the court a diversion filing fee and a unitary assessment fee, unless the court determines I am indigent and waives all or part of these fees.

"* * * * *

"6.   I will not operate a motor vehicle while using or under the influence of intoxicants and will comply fully with state laws that discourage operating a motor vehicle while using or under the influence of intoxicants.

"* * * * *

"If the court allows you to enter into the diversion program, and if you keep these agreements, the court will dismiss the DUII charge at the end of one year. * * *

"* * * * *

"NOTICE TO DEFENDANT: If the court grants a diver-
sion agreement, the agreement will be considered violated
if the court receives notice, at any time during the diversion
period, that you committed the offense of DUII[.]"

On December 1, 2008, the trial court gave written
notice to the state that, "[s]ix months having elapsed since
the conclusion of the diversion period, and no motion having
been filed to revoke the diversion or dismiss the DUII
charge," the charge "would be dismissed with prejudice on
January 6, 2009," unless a motion was filed before that time.
On January 2, 2009, the state filed a motion and order to
show cause why the diversion agreement should not be
revoked, asserting that defendant "ha[d] failed to pay the
Diversion fees." On January 23, 2009, the court held a hear-
ing on the matter. At the hearing, the prosecutor acknowl-
edged that defendant had submitted to the required evalua-
tion and paid the corresponding evaluation fee, but stated
that defendant apparently had not paid "the money that [she
owed] the Court," although the amount owed was not ascer-
tained at that point. During the hearing, defendant's attor-
ney reported that defendant had had another DUII convic-
tion, and that he understood that the district attorney's office
would be filing an amended petition to revoke the diversion
agreement in this case based on the new DUII. The court set
the matter over to give the state an opportunity to file an
amended motion.

The state filed an amended motion, this time assert-
ing that, since entering into the diversion agreement, defen-
dant had "failed to fully comply with the laws of this state
designed to discourage the use of intoxicants in conjunction
with the operation of a motor vehicle," and "ha[d] failed to
pay the evaluation fee." On April 1, 2009, the court held a
hearing on the amended motion. During that hearing, the
court discerned that the new DUII had occurred in June
2008, outside the one-year diversion period specified in the
diversion agreement. The state argued that, because "the
diversion has not yet been dismissed, then it's still an open,
pending case and, therefore, it would have been a violation of
diversion." Defendant's counsel responded that the new DUII
had not occurred while the diversion agreement was in effect
and that, because the financial obligations imposed by the

diversion agreement had been fully satisfied, defendant had successfully completed diversion, and the instant charge should be dismissed.

The court continued the matter until April 22, 2009, when the court and defense counsel engaged in a colloquy concerning defendant's payments to the court. During that colloquy, the court determined that defendant had, in fact, paid the fees that she owed to the court. The state remonstrated that, because defendant had committed a new DUII before the instant charge was dismissed under the diversion petition, defendant's diversion should be revoked based on her commission of the new offense. The parties and the court then discussed the significance of the timing of the payment of the court fees, because the court was not certain whether defendant had paid the entire amount owed to the court before she committed the new DUII. The court again set over the matter. At a hearing on April 29, 2009, defendant's counsel asserted that, by the end of the one-year diversion period, defendant had paid $355 of the $358 owed to the court,[1] and that defendant had paid the remaining balance within a month after the end of the one-year diversion period—before she committed the new DUII.

The court noted that, in its original motion, the state had asserted that defendant had not paid the diversion fee, "[b]ut you're saying by that time, by, six months or more before, she'd paid the money." Defendant's counsel responded affirmatively. The court then referred to the state's amended motion to revoke the diversion agreement, and the parties debated whether defendant's new DUII constituted a violation of the diversion agreement. The state argued that "she was still technically within that diversion period when she committed the new DUI[I]." The prosecutor then added:

> "[I]n addition to that issue, Your Honor, it's sounding like she was short on her payment before the, the completion period, and she did not ask for * * * an extension of the diversion within that thirty days prior to diversion ending, which was required by the statute as well."

---

[1] The record contains a document from the evaluator indicating that defendant's fees had been paid and her treatment program had been completed.

The court rejected the state's argument that the diversion period extended beyond the year specified in the agreement as long as the underlying charge had not been dismissed. The court then addressed the state's additional argument that the court fees had not been entirely paid within the diversion period, and noted that the agreement specifically provided that the court could waive all or part of the fees. Defendant's counsel urged the court to waive any unpaid portion of the diversion filing fee pursuant to ORS 813.210(2); the state responded that the statute should be read to mean that the court "would waive the fees at the beginning, entering diversion, not at the end when they haven't actually completed the requirements." The court then waived the small portion of the fee that had not been paid before the end of the one-year diversion period, and it dismissed the DUII charge.

■ On appeal, the state makes two arguments: (1) because the DUII charge that was the subject of the diversion agreement had not yet been dismissed, defendant's new DUII, which occurred before the dismissal but after the one-year diversion period, provided a basis for revocation of the diversion agreement and entry of her guilty plea in this case; and (2) because defendant had failed to pay all the fees owed to the court within the one-year diversion period, the trial court erred in concluding that she had successfully completed diversion.[2]

■ As an initial matter, we consider an issue not raised by the parties: whether the state's failure to allege nonpayment of court fees in its amended motion to revoke diversion precludes it from arguing that the trial court erred in failing to revoke diversion on the basis that the entire filing fee was not timely paid.[3] As explained below, we conclude that the

_____

[2] The state actually argues that the trial court "erroneously purported to accept [defendant's] late payment of fees *nunc pro tunc*[.]" There is no basis in the record for the state's suggestion that the court did anything—or "purported" to do anything—*nunc pro tunc* in this case. A *nunc pro tunc* order is something that "suppl[ies] an omission in the record of action actually taken but omitted from the record." *Gillespie v. Kononen*, 310 Or 272, 276 n 7, 797 P2d 361 (1990). Such an order "is effective only when it records a previously omitted truth—it does not create, but only speaks what has been done." *Id.* No order was entered *nunc pro tunc* in this case, nor did anything that the trial court said indicate that it intended to take any action *nunc pro tunc*. We thus reframe the issue presented to conform with the trial court's actual ruling.

[3] As noted above, the state's initial motion to revoke diversion did assert that basis for revocation. Its amended motion, however, asserted two different bases:

state's allegations do not limit the court's duty to terminate diversion and enter a guilty plea if the court determines that a defendant has failed to fulfill the terms of a diversion agreement.

ORS 813.250 describes the means by which charges may be dismissed once diversion has been successfully completed. First, a defendant who has performed all of his or her obligations under a diversion agreement may seek dismissal of the DUII charge with prejudice. ORS 813.250(1). Second, if the defendant has not, "within six months after the conclusion of the diversion period," sought dismissal pursuant to subsection (1) of the statute, the court, may, on its own motion, enter an order dismissing the charge after giving notice to the state of its intent to do so (which is what occurred in this case). ORS 813.250(3). Under ORS 813.255(1), at any time before the court dismisses the charge, the state or the court may issue an order requiring the defendant to show cause why the diversion agreement should not instead be terminated. ORS 813.225 further provides:

> "(3) The court *shall* terminate the diversion agreement and enter the guilty plea or no contest plea that was filed as part of the petition for the diversion agreement if:
>
> "(a) At the hearing on the order to show cause, the court finds by a preponderance of the evidence that *any* of the reasons for termination described in this section exist[.]
>
> "* * * * *
>
> "(5) The court *shall* terminate a diversion agreement under this section for any of the following reasons:
>
> "(a) The defendant fails to fulfill the terms of the diversion agreement."

(Emphasis added.)

Thus, under ORS 813.250 and ORS 813.255, after the one-year diversion period has expired and the defendant has not affirmatively asked the court to dismiss the DUII charge, the *defendant* may be required to show cause why the

---

that defendant's subsequent DUII provided grounds for revocation, and that defendant had failed to pay the assessment fee associated with her diversion treatment. The state does not assert that it established the latter basis for revocation of diversion, and, in fact, the court found—and the record supports—that defendant did pay the assessment.

court should not terminate the diversion agreement and enter the defendant's guilty plea. Although, as a practical matter, the state ordinarily would be expected to take the lead in demonstrating that grounds for termination of the diversion agreement exist, the statute does not require it to do so. Rather, after a show cause order has issued and a hearing has been held, the court must, by a preponderance of the evidence, determine whether grounds for terminating the diversion agreement exist. ORS 813.255(3). In sum, the state's failure to allege defendant's failure to timely pay diversion fees in its amended motion is not dispositive; if a preponderance of evidence at the hearing demonstrated grounds for terminating the diversion agreement, the court was required to do so.

■ We turn to the state's argument that defendant's second DUII offense, although committed outside the one-year period covered by the diversion agreement, nonetheless constituted a violation of that agreement. As an initial matter, we note that the diversion agreement itself does not support the state's thesis. The agreement specifies that the "diversion period is one year," and it further provides that the year "begin[s] on 4/24/07 and end[s] on 4/23/08."[4] The pertinent statute, likewise, indicates that a "diversion agreement shall be for a period of one year after the date the court allows the petition." ORS 813.230(3). The state cites no authority for its contention that a defendant remains bound to the terms of a diversion agreement after the one-year period specified in the agreement has passed. We reject the state's argument without further discussion. The trial court properly concluded that the DUII that defendant committed after the end of the diversion period did not provide a basis for concluding that she had violated the agreement.

■ We turn to the state's remaining argument—that the trial court erred in waiving the final three dollars of the filing fee that defendant owed but had not paid by the end of the one-year diversion period and that, as a consequence, the trial court erroneously determined that defendant "had fully

---

[4] Similarly, the court explained the agreement to defendant as follows: "Also for the year of diversion, you cannot have any alcohol in your system while driving a motor vehicle."

complied with and performed the conditions of the diversion agreement." ORS 813.250. The state argues that, under *State v. Maul*, 205 Or App 14, 132 P3d 665, *rev den*, 341 Or 80 (2006), and *State v. Vargas-Garcia*, 217 Or App 70, 174 P3d 1046 (2007), any failure to pay diversion fees within the time frame specified in a diversion agreement must result in termination of the agreement on the ground that the defendant has failed to comply with it. In *Maul*, the defendant had not completed the treatment required under his diversion agreement within the one-year period specified in the agreement, had received the maximum 180-day extension of the agreement authorized by ORS 813.225(5), and ultimately had completed treatment after the 180-day extension had expired. *Id.* at 17-18. The trial court found that extenuating circumstances existed, and therefore dismissed the underlying DUII charge. The state appealed, and we reversed:

"The trial court purported to 'excuse' defendant for failing to [comply with the terms of the diversion agreement within the specified period] because of extenuating circumstances pertaining to defendant's employment obligations. The statute, however, is unequivocal and, frankly, inflexible. Only if a defendant completes the diversion program 'within the extended diversion period' may the court dismiss the charge. ORS 813.225(7)(a). There is no provision for additional extensions of time. Nor is there provision for 'tolling' the one period of extension that the statute does authorize."

*Id.* at 19.

Similarly, in *Vargas-Garcia*, the defendant did not fulfill all of his obligations under a diversion agreement within the one-year period specified in the agreement. There, the court had dismissed the underlying DUII despite the fact that the defendant still owed approximately $2,400 in fees after completing treatment. 217 Or App at 73. We noted that "it is undisputed that the diversion agreement required defendant to pay certain fees," and therefore concluded that the trial court had "erred in denying the state's request to revoke the diversion agreement and in dismissing the charges against defendant." *Id.*

Neither *Maul* nor *Vargas-Garcia* is directly on point. In both of those cases, the trial court did something that the statutory scheme simply did not contemplate. In *Maul*, the court, in essence, granted a further extension of time to comply with the diversion agreement that was not authorized by the "inflexible" provision that the court could grant "only one extension of a diversion agreement," and that it could be "for no more than 180 days." ORS 813.225(5), (6). Similarly, in *Vargas-Garcia*, the trial court dismissed the DUII despite the fact that the defendant never actually complied with the terms of the diversion agreement requiring him to pay fees.

Here, by contrast, the trial court relied on a specific provision of the diversion statutes in waiving the portion of the filing fee that had not been paid by the end of the one-year diversion period. ORS 813.210 contains several provisions regarding payments associated with diversion:

"(2) The defendant shall pay to the court, at the time of filing a petition for a driving under the influence of intoxicants diversion agreement, a filing fee established under ORS 813.240. The court may make provision for payment of the filing fee by the defendant on an installment basis. *The court may waive all or part of the filing fee* in cases involving indigent defendants. * * *

"(3) The defendant shall pay to the agency or organization providing the diagnostic assessment, at the time the petition is allowed, the fee required by ORS 813.240(2).

"(4) Unless otherwise provided under paragraph (b) of this subsection, the defendant shall pay to the court any court-appointed attorney fees agreed to under ORS 813.200(4)(i). Payments shall be made prior to the end of the diversion period on a schedule determined by the court."

(Emphasis added.)

The unpaid portion of the fee at issue here was assessed pursuant to ORS 813.210(2). When the court initially accepted defendant's diversion petition, it specifically allowed defendant until April 23, 2008, to pay that fee, thus "mak[ing] provision for payment of the filing fee by the defendant on an installment basis" rather than requiring the fee to be paid at the time of filing of the petition. ORS 813.210(2). In

its final hearing, held after the one-year diversion period had expired, the court relied on the provision that it "may waive all or part of the filing fee in cases involving indigent defendants" as a basis for waiving the residual portion of the fee.[5]

The state asserts that, implicit in the statutory framework, is a requirement that the fee described in ORS 813.210(2) either be paid or waived *before* the expiration of the diversion agreement. Otherwise, the state asserts, a defendant cannot be said to have "fulfil[led] the terms of the diversion agreement," ORS 813.225(5)(b), which contemplates that the obligations be performed within the one-year term of the agreement (or, in cases in which an extension is allowed pursuant to ORS 813.225, within the additional time allowed under that statute).

We note that ORS 813.210(2) does not *explicitly* require that the filing fee be paid (or waived) within the diversion period itself. *Compare* ORS 813.210(4) (payment of attorney fees "shall be made prior to the end of the diversion period"). However, we must agree with the state that such a requirement is nonetheless implicit in the statutory scheme. As we noted in *Maul*, the statute allowing for extension of diversion agreements, ORS 813.225(7)(a), is "unequivocal and, frankly, inflexible." 205 Or App at 19. Although this case does not involve an extension under that statute, the state is correct that, if we were to interpret ORS 813.210(2) to authorize a waiver of the filing fee after the expiration of a diversion agreement, it would undermine our conclusion in *Maul* that the statutory scheme is inflexible in requiring fulfillment of diversion conditions pertaining to the payment of fees under ORS 813.210(2). *See State v. Rowland*, 234 Or App 494, 499, 228 P3d 670 (2010) ("*Maul* and *Vargas-Garcia* stand for the unremarkable proposition that ORS 813.225 means what it says: If a defendant subject to a diversion agreement does not complete the defendant's obligations under the agreement—including payment of all monetary obligations—by the end of the diversion period, 'the court *shall* enter the guilty plea or no contest plea filed as part of

---

[5] The state asserts on appeal that the court "made no finding of indigency." The record does not support the state's assertion.

the petition for a diversion agreement, *shall* enter a judgment of conviction and *shall* sentence the defendant.' ORS 813.225(7)(b)." (Emphasis in *Rowland*.)).

In sum, we conclude that, when a trial court considers whether to terminate a diversion agreement and enter a guilty plea pursuant to ORS 813.255(5)(a) on the ground that a "defendant [has failed] to fulfill the terms of the diversion agreement," the court must look solely to whether, within the time required by the agreement—including any extension authorized by ORS 813.225—the defendant fulfilled the terms of the agreement. In this case, it is undisputed that defendant failed to pay a small portion of the filing fee assessed pursuant to ORS 813.210(2) during the one-year diversion period. Accordingly, the trial court was required, pursuant to ORS 813.225(5)(a), to enter her plea of guilty to the crime of DUII.

Reversed and remanded for entry of judgment of conviction and for sentencing.